G. D. SEARLE & CO. *v.* COHN ET AL.

No. 80–644.   Argued December 7, 1981—Decided February 24, 1982

BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, REHNQUIST, and O'CONNOR, JJ., joined, and in Parts I and II of which BURGER, C. J., and POWELL, J., joined. POWELL, J., filed an opinion concurring in part and dissenting in part, in which BURGER, C. J., joined, *post*, p. 414. STEVENS, J., filed a dissenting opinion, *post*, p. 420.

*William P. Richmond* argued the cause for petitioner. With him on the briefs was *David W. Carpenter.*

*Walter R. Cohn* argued the cause and filed a brief for respondents.*

JUSTICE BLACKMUN delivered the opinion of the Court.

A New Jersey statute, N. J. Stat. Ann. § 2A:14–22 (West 1952), tolls the limitation period for an action against a foreign corporation that is amenable to jurisdiction in New Jersey courts but that has in New Jersey no person or officer upon whom process may be served. The United States Court of Appeals for the Third Circuit in this case held that the statute does not violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment. We agree, but we vacate the Court of Appeals' judgment and remand the case for consideration of petitioner's Commerce Clause challenge to the statute.

I

Respondents, Susan and Walter Cohn, are husband and wife. In 1963, Susan Cohn suffered a stroke. Eleven years later, in 1974, the Cohns sued petitioner, G. D. Searle & Co., in the Superior Court of New Jersey, Essex County, alleging that Susan Cohn's stroke was caused by her use of an oral

---

*Stephen J. Pollak, I. Michael Greenberger,* and *Franklin D. Kramer* filed a brief for Brinco Mining Limited as *amicus curiae* urging reversal.

*Arthur Ian Miltz* and *Richard F. Gerry* filed a brief for the Association of Trial Lawyers of America as *amicus curiae* urging affirmance.

contraceptive manufactured by petitioner.[1]  Petitioner was served under New Jersey's long-arm rule, N. J. Ct. Rule 4:4–4(c)(1) (1969).  Petitioner removed the suit to federal court and thereafter moved for summary judgment based upon New Jersey's 2-year statute of limitation, N. J. Stat. Ann. § 2A:14–2 (West 1952), governing an "action at law for an injury to the person caused by . . . wrongful act."  Respondents countered with § 2A:14–22.  That section tolls the statute of limitation for a cause of action against a foreign corporation that "is not represented" in New Jersey "by any person or officer upon whom summons or other original process may be served."[2]

The District Court ruled that petitioner was not represented in New Jersey for the purposes of the tolling provision.[3]  447 F. Supp. 903, 907–909 (NJ 1978).  Nevertheless,

---

[1] Petitioner is a Delaware corporation with principal place of business in Illinois.  At all times pertinent to this case, petitioner was engaged in the business of manufacturing and selling pharmaceutical products.

[2] Section 2A:14–22 reads in pertinent part:

"If any person against whom there is any of the causes of action specified in sections 2A:14–1 to 2A:14–5 and 2A:14–8 . . . is not a resident of this state when such cause of action accrues, . . . or if any corporation . . . not organized under the laws of this state, against whom there is such a cause of action, is not represented in this state by any person or officer upon whom summons or other original process may be served, when such cause of action accrues or at any time before the expiration of the times so limited, the time or times during which such person . . . is not residing within this state or such corporation . . . is not so represented within this state shall not be computed as part of the periods of time within which such an action is required to be commenced by the section.  The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation."

[3] Petitioner had so-called "detailmen" in New Jersey.  These were employees who promoted its products among New Jersey physicians.  The District Court, contrary to petitioner's urging, held that the detailmen were not "persons" or "officers" for the purpose of the tolling provision, 447 F. Supp. 903, 906–907 (NJ 1978), and the Court of Appeals agreed, *Hopkins* v. *Kelsey-Hayes, Inc.*, 628 F. 2d 801, 808 (CA3 1980).  That holding is not disputed in this Court.

it held that respondents' suit was barred. According to the District Court, the tolling provision had operated to preserve only causes of action against corporate defendants that were not subject to *in personam* jurisdiction in New Jersey. With the enactment of New Jersey's long-arm rule, now N. J. Ct. Rule 4:4–4(c),[4] the rationale for the pre-existing tolling provision ceased to exist. On this reasoning, the court held that the tolling provision served no logical purpose, found it invalid under the Equal Protection Clause, and ruled that the 2-year statute of limitation therefore barred respondents' suit. 447 F. Supp., at 911–913.

Respondents appealed. Before the Court of Appeals reached a decision, however, the Supreme Court of New Jersey decided *Velmohos* v. *Maren Engineering Corp.*, 83 N. J. 282, 416 A. 2d 372 (1980), appeal pending, No. 80–629. That court ruled, as a matter of New Jersey law, that the tolling provision continued in force despite the advent of long-arm jurisdiction. In addition, the court concluded that the tolling provision did not violate the Equal Protection or Due Process Clauses of the Fourteenth Amendment, because the increased difficulty of out-of-state service provided a rational basis for tolling the statute of limitation in a suit against an unrepresented foreign corporation.

The Court of Appeals then followed the New Jersey Supreme Court's lead and reversed the District Court.[5] Summing up what it felt to be the rational basis for the tolling provision, the Court of Appeals explained:

---

[4] New Jersey's long-arm service rule was promulgated in 1958 as N. J. Ct. R. R. 4:4–4(d). In 1971, the New Jersey Supreme Court interpreted the rule to permit extraterritorial service to the full extent allowed by the United States Constitution. *Avdel Corp.* v. *Mecure*, 58 N. J. 264, 277 A. 2d 207. See generally *Velmohos* v. *Maren Engineering Corp.*, 83 N. J. 282, 289–292, 416 A. 2d 372, 376–378 (1980), appeal pending, No. 80–629.

[5] The Court of Appeals' decision was on consolidated appeals of the instant case and *Hopkins* v. *Kelsey-Hayes, Inc.*, 463 F. Supp. 539 (NJ 1978), aff'd, 628 F. 2d 801 (CA3 1980), cert. pending, No. 80–663. In *Hopkins*, a different New Jersey Federal District Judge had held the tolling provision to be consistent with the Equal Protection and Due Process Clauses.

"Since service of process under the long-arm statute is more difficult and time-consuming to achieve than service within the state, and since out-of-state, non-represented corporate defendants may be difficult to locate let alone serve, tolling the statute of limitations protects New Jersey plaintiffs and facilitates their lawsuits against such defendants." *Hopkins* v. *Kelsey-Hayes, Inc.*, 628 F. 2d 801, 811 (CA3 1980).

Because of the novel and substantial character of the federal issue involved, we granted certiorari, 451 U. S. 905 (1981).

## II

Like the Court of Appeals, we conclude that the New Jersey statute does not violate the Equal Protection Clause. In the absence of a classification that is inherently invidious or that impinges upon fundamental rights, a state statute is to be upheld against equal protection attack if it is rationally related to the achievement of legitimate governmental ends. *Schweiker* v. *Wilson*, 450 U. S. 221, 230 (1981). The New Jersey tolling provision need satisfy only this constitutional minimum. As the Court explained in *Chase Securities Corp.* v. *Donaldson*, 325 U. S. 304, 314 (1945):

"[Statutes of limitation] represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."

See also *Campbell* v. *Holt*, 115 U. S. 620 (1885).[6]

---

[6] Before the Court of Appeals, petitioner conceded that the tolling provision does not implicate a suspect classification. See 628 F. 2d, at

Petitioner insists that the tolling statute no longer is rationally related to a legitimate state objective. Repeating the argument it made below, petitioner claims that the statute's only purpose was to preserve causes of action for those New Jersey plaintiffs unable to obtain *in personam* jurisdiction over unrepresented foreign corporations. With the presence now of long-arm jurisdiction, petitioner contends, there is no longer a valid reason for tolling the limitation period for a suit against an amenable foreign corporation without a New Jersey representative.

We note at the outset, and in passing, that petitioner's argument fails as a matter of state law. The New Jersey Supreme Court disagreed with petitioner's interpretation of the statute. That court observed that the State's original tolling provision did not mention corporations and thus treated them like all other defendants. In 1949, the state legislature amended the statute and exempted corporations except those foreign corporations "not represented" in New Jersey. The legislature, the New Jersey Supreme Court emphasized, did not limit the tolling provision to corporations "not amenable to service" in New Jersey. Consequently, the court reasoned, the tolling provision was not rendered meaningless by the subsequent acceptance of long-arm jurisdiction. *Velmohos* v. *Maren Engineering Corp.*, 83 N. J., at 288–293, 416 A. 2d, at 376–379. As construed by the highest judicial authority on New Jersey law, the meaning of the tolling statute cannot be confined as narrowly as petitioner would like.

---

808–809. Before this Court, petitioner argues for a heightened level of scrutiny because it is a corporation not doing business in New Jersey and therefore is without a voice in the New Jersey Legislature. Only a rational basis, however, is required to support a distinction between foreign and domestic corporations. *Western & Southern Life Ins. Co.* v. *State Board of Equalization of California*, 451 U. S. 648, 668 (1981). The same is true here where the tolling provision treats an unrepresented foreign corporation differently from a domestic corporation and from a foreign corporation having a New Jersey representative.

When the statute is examined under the Equal Protection Clause, it survives petitioner's constitutional challenge because rational reasons support tolling the limitation period for unrepresented foreign corporations despite the institution of long-arm jurisdiction in New Jersey. First, the unrepresented foreign corporation remains potentially difficult to locate. Long-arm jurisdiction does not alleviate this problem, since a New Jersey plaintiff must find the unrepresented foreign corporation before it can be served. See *id.*, at 296, 416 A. 2d, at 380. It is true, of course, that respondents had little or no trouble locating this particular, well-known defendant-petitioner, but the tolling provision is premised on a reasonable assumption that unrepresented foreign corporations, as a general rule, may not be so easy to find and serve. See *Weinberger* v. *Salfi*, 422 U. S. 749, 780–785 (1975).

Second, the institution of long-arm jurisdiction in New Jersey has not made service upon an unrepresented foreign corporation the equivalent of service upon a corporation with a New Jersey representative. The long-arm rule, N. J. Ct. Rule 4:4–4(c)(1) (1969), prescribes conditions upon extraterritorial service to ensure that New Jersey's long-arm jurisdiction has been properly invoked. In *Velmohos*, the New Jersey Supreme Court explained:

> "Under our rules, extra-territorial service is not simply an alternative to service within the State. Plaintiffs may not resort to out-of-state service unless proper efforts to effect service in New Jersey have failed. The rule imposes a further burden on a plaintiff by requiring him to gather sufficient information to satisfy a court that service is 'consistent with due process of law.'" 83 N. J., at 296, 416 A. 2d, at 381.

Thus, there are burdens a plaintiff must bear when he sues a foreign corporation lacking a New Jersey representative that he would not bear if the defendant were a domestic

corporation or a foreign corporation with a New Jersey representative.

In response to these rationales for treating unrepresented foreign corporations differently from other corporations, petitioner argues that the tolling provision is unnecessary. Petitioner cites N. J. Ct. Rule 4:2–2 and contends that a plaintiff can preserve his cause of action against a hard-to-locate corporate defendant by filing a complaint and thereby halting the running of the limitation period. But this is not an adequate substitute for the tolling provision. A court may dismiss a case if it has not been prosecuted after six months, N. J. Ct. Rule 1:13–7, or if summons is not issued within 10 days of the filing of the complaint, N. J. Ct. Rule 4:4–1. In any event, a State may provide more than one solution for a perceived problem. The Court of Appeals appropriately commented: "Nothing in law or logic prevents the New Jersey legislature from providing New Jersey plaintiffs with a mechanism for relief from the burdens of suits against nonrepresented foreign corporations which is additional to any mechanism found in the Court Rules." 628 F. 2d, at 811.

Petitioner also argues that a New Jersey plaintiff's burdens do not justify leaving a defendant open to suit without any time limit. In *Velmohos*, however, the New Jersey Supreme Court expressly authorized an unrepresented foreign corporation to plead another defense in response to a tardy suit. While the tolling provision denies an unrepresented foreign corporation the benefit of the statute of limitation, the corporation, the court stated flatly, remains free to plead laches. "If a plaintiff's delay is inexcusable and has resulted in prejudice to the defendant, the latter may raise the equitable defense of laches to bar the claim." 83 N. J., at 293, n. 10, 416 A. 2d, at 378, n. 10. Thus, under New Jersey law, an amenable, unrepresented foreign corporation may successfully raise a bar to a plaintiff's suit if the plaintiff's delay cannot be excused and the corporation has suffered "prejudice."

In sum, because of the burdens connected with serving unrepresented foreign corporations, we agree with the Court of Appeals and the New Jersey Supreme Court that the tolling provision does not deprive an unrepresented foreign corporation of the equal protection of the laws.[7] See *Dew* v. *Appleberry*, 23 Cal. 3d 630, 591 P. 2d 509 (1979) (holding similar tolling provision rationally related to a valid governmental interest); *Vaughn* v. *Deitz*, 430 S. W. 2d 487, 490 (Tex. 1968) (holding that absence from the State may, consistent with equal protection, support suspension of the statute of limitation). Cf. *Bauserman* v. *Blunt*, 147 U. S. 647 (1893) (applying Kansas statute tolling limitation period for out-of-state defendant subject to service, without discussing the constitutional issue).

## III

Petitioner, however, raises another constitutional challenge. The tolling provision as interpreted by the New Jer-

---

[7] Petitioner also presses a due process claim. In the Court of Appeals, petitioner argued that the tolling statute violates due process "by unfairly and irrationally denying certain foreign corporations the benefit of the Statute of Limitations without furthering any legitimate societal interest." Brief for Defendant-Appellee and Cross-Appellant in Nos. 79–2406 and 79–2605 (CA3), p. 29. The Court of Appeals rejected petitioner's due process challenge to the statute at the same time that it rejected petitioner's equal protection contention. See 628 F. 2d, at 808–809. Indeed, this due process argument is nothing more than a restatement of petitioner's equal protection claim. See *Velmohos*, 83 N. J., at 297, 416 A. 2d, at 381.

In this Court, petitioner has attempted to put forward a new due process argument. Petitioner notes that it can obtain the benefit of the statute of limitation by appointing an agent to accept service. See *Velmohos*, 83 N. J., at 293, n. 10, 416 A. 2d, at 378, n. 10; see also *infra*, at 413–414. Fearing that appointment of an agent might subject it to suit in New Jersey when there otherwise would not be the minimum contacts required for suit in that State under the Due Process Clause, see *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), petitioner insists that New Jersey law violates due process by conditioning the benefit of the limitation period upon the appointment of a New Jersey agent. Because petitioner did not present this argument to the Court of Appeals, we do not address it. See *United States* v. *Ortiz*, 422 U. S. 891, 898 (1975).

sey Supreme Court, petitioner argues, violates the Commerce Clause. Petitioner insists that, in order to obtain the benefit of the statute of limitation, it must obtain a certificate of authority by registering to do business in New Jersey. See N. J. Stat. Ann. § 14A:13–2 (West 1969). As a result, it will subject itself to all the duties and liabilities imposed on a domestic New Jersey corporation. Petitioner points out that it is engaged solely in interstate commerce in New Jersey, and, relying on cases such as *Allenberg Cotton Co.* v. *Pittman*, 419 U. S. 20 (1974), and *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197 (1914), petitioner contends that New Jersey violates the Commerce Clause by requiring it to register to do business in New Jersey in order to gain the benefit of the statute of limitation. For two reasons, we decline to resolve this issue.

First, neither the District Court nor the Court of Appeals addressed the question directly. There is no mention of the Commerce Clause in the opinion of the Court of Appeals. In a footnote, the District Court suggested that the tolling provision would violate the Commerce Clause. 447 F. Supp., at 911, n. 17. But the District Court there was answering respondents' contention that the tolling provision was enacted as a penalty to induce corporations to register to do business in New Jersey, an argument respondents no longer make.[8] Thus, neither court considered the Commerce Clause argument in its present form.

Second, the Commerce Clause issue is clouded by an ambiguity in state law. The dispute over the Commerce Clause

---

[8] At that time, respondents were seeking to supply a rational basis for the tolling provision by arguing that it was intended as a penalty to induce foreign corporations to obtain New Jersey licenses. The District Court rejected that interpretation of the tolling provision before suggesting that respondents' reading of the statute would violate the Commerce Clause. 447 F. Supp., at 911, n. 17. It seems to us that the District Court was on sound ground when it rejected this theory of the statute's origin, since there is no hint in *Velmohos* that the tolling provision was designed to be a penalty for failure to obtain a New Jersey license.

centers in what seems to us to be an opaque footnote in the New Jersey Supreme Court's majority opinion in *Velmohos*. That court, without citation, commented: "We note that whatever hardship on foreign corporations might be caused by continued exposure to suit can be easily eliminated by the designation of an agent for service of process within the State." 83 N. J., at 293, n. 10, 416 A. 2d, at 378, n. 10. Petitioner, contending that there is no procedure in New Jersey for simply appointing an agent, interprets this sentence as requiring it to register to do business in New Jersey pursuant to N. J. Stat. Ann. § 14A:13–2 (West 1969) in order to obtain the benefit of the statute of limitation. Respondents, on the other hand, read the footnote as referring to the mere appointment of an agent, to be accomplished in some manner unexplained to us.

The lone sentence in the *Velmohos* footnote by itself does not clearly demonstrate the correctness of either view or lucidly inform us as to what the state law is. We consider it unwise for us to pass upon the constitutionality of this aspect of New Jersey law when we are uncertain of the critical footnote's meaning, particularly in light of the fact that the lower courts in this case did not address the Commerce Clause or the state-law issues. Consequently, we vacate the Court of Appeals' judgment and remand the case, so that the Court of Appeals may determine whether petitioner's Commerce Clause argument, if it was properly raised below, has merit.

*It is so ordered.*


JUSTICE POWELL, with whom THE CHIEF JUSTICE joins, concurring in part and dissenting in part.

I concur in Parts I and II of the Court's opinion. In Part III of its opinion, the Court addresses the Commerce Clause question and "decline[s] to resolve" it because "neither the District Court nor the Court of Appeals addressed the question directly." A further reason assigned by the Court for

remanding on this issue is that one sentence in a footnote to *Velmohos* v. *Maren Engineering Corp.*, 83 N. J. 282, 293, n. 10, 416 A. 2d 372, 378, n. 10 (1980), is "ambiguous."

The Commerce Clause question was not presented to the District Court by petitioner,[1] and normally this would fully justify a remand. It was, however, presented and argued to the Court of Appeals for the Third Circuit. Pet. for Cert. 6–7.[2] Curiously, that court did not mention the question in its opinion. Petitioner continued, as it had a right to do, to rely on the ground. Its petition for certiorari expressly included the question whether New Jersey's tolling statute "constitutes the imposition of a burden [on] interstate commerce." *Id.*, at i. With full knowledge that the Court of Appeals had ignored petitioner's Commerce Clause argument, we granted certiorari. Our grant did not limit the questions presented. See 451 U. S. 905 (1981). And respondents have not suggested that this question is not properly before us. Indeed, the issue was addressed at length by both parties in their briefs and in oral argument. In my view, the question is properly before us.

As I do not share the Court's view that ambiguity exists as to New Jersey law, I would decide the question on which we granted this case.

I

Petitioner argues that under New Jersey law the only way a foreign corporation may appoint an agent for service of process, and thereby obtain the benefit of the statute of limitations, is to obtain a certificate of authority to transact busi-

---

[1] The District Court, apparently *sua sponte*, suggested that the tolling provision would violate the Commerce Clause but did not decide the question. See *ante*, at 413, and n. 8.

[2] Petitioner's assertion that it argued the Commerce Clause issue before the Court of Appeals is confirmed by its Third Circuit brief. See Brief for Defendant-Appellee and Cross-Appellant G. D. Searle & Co. in Nos. 79–2406 and 79–2605 (CA3), pp. 2, 33–38.

ness in the State. Respondents answer that other means of appointing such an agent—without qualifying to do business—are provided by New Jersey law. This difference between the parties is critical to the resolution of the Commerce Clause question, as significant consequences follow from registration. Neither *Velmohos*, nor any other New Jersey case brought to our attention, identifies any means—other than qualification—of appointing a duly authorized agent for service of process.

The Court perceives ambiguity in the following footnote in *Velmohos:*

> "We note that whatever hardship on foreign corporations might be caused by continued exposure to suit [due to tolling of the statute of limitations] can be easily eliminated by the designation of an agent for service of process within the State." 83 N. J., at 293, n. 10., 416 A. 2d, at 378, n. 10.

The question before us was not the issue in *Velmohos.* The footnote merely says that the statute of limitations tolling problem may be eliminated "by the designation of an agent for service of process." This is simply a neutral observation that says *nothing* as to the means of designation of an agent under New Jersey law. If there were a genuine ambiguity in New Jersey statutes a remand would indeed be justified. I find no such ambiguity.

## II

Only three New Jersey statutes have been identified as relevant, one by petitioner and two by respondents.

Petitioner cites N. J. Stat. Ann. §§ 14A:4–1 and 14A:13–4 (West 1969). This is a conventional type of statute requiring the qualification of foreign corporations that transact business in the State. It includes the requirement of a registered agent. Section 14A:13–4(1) requires the foreign corporation to file in the office of the Secretary of State an application setting forth specified information, including the

name and address of the registered agent and "a statement that the registered agent is an agent of the corporation upon whom process against the corporation may be served."

Counsel for petitioner obtained—and filed with the Court—an opinion from the New Jersey Secretary of State advising, in effect, that the foregoing statute is the *only* means of designating a registered agent for service of process.[3]

The *Velmohos* opinion itself suggests that this statute is the means by which a corporation must appoint an agent to gain the benefit of New Jersey's statute of limitations. In *Velmohos*, the New Jersey Supreme Court reviewed the legislative history of the tolling provision at issue in this case. As originally enacted, it simply tolled limitations periods while a *person* was not a resident of the State; there was no specific reference to corporations. The provision was amended in 1949 to add the current language, which grants the benefit of the statutes of limitations to foreign corporations that are "represented" in New Jersey. The *Velmohos* court quoted a portion of the 1949 legislative history: "'Foreign corporations *licensed to do business in New Jersey* are now deprived by judicial construction of the benefit of the statute of limitations. The purpose of this bill is to correct that situation.'" 83 N. J., at 290, 416 A. 2d, at 377, quoting *Statement Accompanying Assembly No. 467* (1949) (emphasis added). See also *Coons* v. *Honda Motor Co., Ltd. of Japan*, 176 N. J. Super. 575, 582, 424 A. 2d 446, 450 (1980), cert. pending, No. 80–2003. This reference to a conventional scheme of licensing foreign corporations is further confirma-

---

[3] The opinion reads in full as follows:

"In response to your recent letter, please be advised that it is the view of the Department of State that unless a foreign corporation has qualified to do business in New Jersey, they are unable to designate a registered agent for service of process." Letter from Frank Capece, Executive Assistant to the New Jersey Secretary of State, to James H. Freis, Esq. (Oct. 22, 1981).

tion that § 14A:4-1 *et seq.* are the means by which corporations are to gain relief from the disputed tolling provision.

Respondents are represented by New Jersey counsel. They do not dispute that statutory authority is necessary. Rather, they insist that the qualification statute is not the only statute authorizing appointment of a New Jersey agent for service. They cite two other statutes: the New Jersey fictitious corporate name statute, N. J. Stat. Ann. § 14A:2-2.1 (West Supp. 1981-1982), and the New Jersey business and partnership name registration statute. § 56:1-1 (West 1964). Respondents cite no New Jersey case, and present no opinion from any state official, in support of their view that these statutes provide a means of appointing an agent for service without complying with § 14A:4-1 *et seq.*

Neither of the statutes cited by respondents appears to have anything to do with the appointment by foreign corporations of agents for the service of process. The fictitious corporate name statute makes no reference either to appointment of agents of any type or to provisions for service of process. According to the accompanying comments of the New Jersey Corporation Law Revision Commission, "[t]he purpose of this [statute] is to create a public record of fictitious names used by corporations and thereby eliminate the possibility of deception." Commissioners' Comment—1972 Amendment, reprinted after N. J. Stat. Ann. § 14A:2-2.1 (West Supp. 1981-1982). Moreover, counsel for respondents makes no claim that petitioner uses—or has ever used—a fictitious name in New Jersey.

The New Jersey business and partnership name registration law appears to be equally irrelevant. The New Jersey Corporation Law Revision Commission explains the relationship between these two fictitious name statutes:

> "Until adoption of [the corporate fictitious name statute], there was no requirement that a corporation register a fictitious name, although there was a requirement that proprietorships and partnerships transacting busi-

ness under assumed names file business name certificates. N. J. S. A. 56:1–1 *et seq.* *That statute is expressly inapplicable to corporations.* N. J. S. A. 56:1–5." *Ibid.*

Counsel for respondent has offered no answer to the statement of the Revision Commission that the proprietorship and partnership registration statute is "inapplicable to corporations."[4]

Thus, counsel have brought to our attention only three statutes, and I have found no others. The registration statute, § 14A:4–1 *et seq.*, explicitly provides for the designation of an agent for service. Neither of the statutes relied on by respondents has *any* provision for the appointment of an agent by a foreign corporation. In these circumstances, we are justified in concluding—as the opinion from the office of the New Jersey Secretary of State advises—that foreign corporations may designate an agent for service of process only by obtaining a certificate of authority to do business.

This squarely presents the serious question whether the consequences of registration in the State, solely to obtain the protection of the statute of limitations, unduly burden interstate commerce.[5] See *Allenberg Cotton Co.* v. *Pittman,* 419

---

[4] In addition to their facial inapplicability, it is apparent that both of these statutes are administered by the New Jersey Secretary of State— the same office that has advised that foreign corporations are unable to designate a registered agent for service of process without qualifying to do business. See n. 3, *supra.*

[5] Corporations that obtain such certificates apparently must maintain a registered business office, N. J. Stat. Ann. § 14A:4–1 (West Supp. 1981–1982); report annually, § 14A:4–5 (West Supp. 1981–1982); and pay taxes, § 54:10A–2 (West Supp. 1981–1982). In addition, New Jersey apparently also requires such corporations to waive their defense against defending lawsuits in a forum with which they have no minimum contacts, see *International Shoe Co.* v. *Washington,* 326 U.S. 310 (1945), for *all* future lawsuits in New Jersey. See N. J. Stat. Ann. § 14A:13–4(1)(d) (West 1969); *Litton Industrial Systems, Inc.* v. *Kennedy Van Saun Corp.,* 117 N. J. Super. 52, 61, 283 A. 2d 551, 556 (1971). Cf. Restatement (Second)

U. S. 20 (1974).   This challenge has considerable force.   As this was a question on which we granted certiorari and as it has been fully argued by counsel, I think in all fairness we should decide it rather than remand the case for a continuation of this litigation.

I therefore dissent from the decision of the Court to remand.

JUSTICE STEVENS, dissenting.

The equal protection question in this case is novel.   I agree with the Court that there is a rational basis for treating unregistered foreign corporations differently from registered corporations because they are somewhat more difficult to locate and to serve with process.   Thus, a provision that merely gave plaintiffs a fair opportunity to overcome these difficulties—for example, a longer period of limitations for suits against such corporations, or a tolling provision limited to corporations that had not filed their current address with the Secretary of State—would unquestionably be permissible.   But does it follow that it is also rational to deny such corporations the benefit of any statute of limitations?   Because there is a rational basis for *some* differential treatment, does it automatically follow that *any* differential treatment is constitutionally permissible?   I think not; in my view the Constitution requires a rational basis for the special burden imposed on the disfavored class as well as a reason for treating that class differently.

The Court avoids these troubling questions by noting that the New Jersey Supreme Court has stated that an unrepresented foreign corporation may plead the defense of laches in an appropriate case.   *Ante,* at 411.   But there are material

of Conflict of Laws § 44 and Comment *a* (1971) (States may exercise jurisdiction over foreign corporations that have authorized an agent to accept service of process to the extent of the agent's authority to accept service, even though no other basis for jurisdiction exists).

differences between laches—which requires the defendant to prove inexcusable delay and prejudice—and the bar of limitations, which requires no such proof. Thus, the availability of this alternative defense neither eliminates the differential treatment nor provides a justification for it; the defense merely lessens its adverse consequences.

I can find no legitimate state purpose to justify the special burden imposed on unregistered foreign corporations by the challenged statute.* I would reverse the judgment of the Court of Appeals.

---

*I do not understand the Court to be holding that New Jersey has a legitimate interest in attempting to require all corporations to submit in all cases to the jurisdiction of its courts, and that discrimination against unregistered foreign corporations is justified by the State's desire to accomplish this purpose. Since a State may not enact a law that prohibits a foreign corporation from asserting a due process defense to an exercise of personal jurisdiction by a state court, I do not believe that the State may justify a classification that disfavors unregistered foreign corporations on the ground that they refused to take action that would accomplish the same purpose. See *Western & Southern Life Ins. Co.* v. *State Board of Equalization of California,* 451 U. S. 648, 674 (STEVENS, J., dissenting).