Reversed and remanded for further proceedings.

753 A.2d 1222

SUSAN A. PRESCOTT, PLAINTIFF–RESPONDENT, v. PNC BANK CORPORATION, DEFENDANT–APPELLANT, AND ROY TUCKER, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued June 5, 2000—Decided July 7, 2000.

Before Judges KEEFE, A.A. RODRÍGUEZ and COLLESTER.

*David W. Garland* argued the cause for appellant (*Sills, Cummis, Radin, Tischman, Epstein & Gross*, attorneys; *Mr. Garland*, of counsel and on the brief; *Laura Lencses McLester*, on the brief).

*Peter van Schaick* argued the cause for respondent (*Mr. Schaick*, on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

We granted defendant PNC Bank Corporation's motion for leave to appeal from an interlocutory order denying its motion for summary judgment on the ground that plaintiff's LAD claim is barred by the statute of limitations. On July 27, 1993, the Supreme Court held that the two year statute of limitations, rather than the six year statute, applied to LAD claims. *Montells v. Haynes*, 133 *N.J.* 282, 627 *A.*2d 654 (1993). The issue on appeal is whether the Supreme Court's decision in *Montells* applies to causes of action that accrued prior to the decision and requires plaintiffs who held such accrued causes of action to file suit within two years of the date of that decision.

The relevant facts are uncontroverted. Plaintiff's claim for sex discrimination against defendant's predecessor, Midlantic Bank, N.A., accrued on June 24, 1992, when she was terminated, according to plaintiff, in retaliation for complaining about discriminatory treatment. She did not file suit in Superior Court until June 18, 1998, one week shy of the six year statute of limitations if it is deemed applicable, and well beyond two years from the date of the *Montells* decision. In the interim period from the date of her termination to the filing of this suit, plaintiff's claim languished in the Division of Civil Rights. Ultimately, plaintiff was permitted by the Division to withdraw her complaint and closed its file in February 1998.

Relying on: (1) *Standard v. Vas*, 279 *N.J.Super.* 251, 652 *A.*2d 746 (App.Div.1995); (2) a statement made in Justice Garibaldi's dissenting opinion in *Wilson v. Wal–Mart Stores*, 158 *N.J.* 263, 287–88, 729 *A.*2d 1006 (1999); (3) a federal District Court opinion relying on *Standard, supra;* [1] and (4) an unreported opinion by another part of this court; defendant contends that plaintiff was required to file her suit in Superior Court two years from the date of the *Montells* decision. Plaintiff, on the other hand, argues that

---

[1] *Poveromo–Spring v. Exxon Corp.*, 968 *F.Supp.* 219 (D.N.J.1997).

the plain language of the *Montells* Court compels the conclusion that her claim is not barred. We agree with plaintiff and affirm.

Because the *Montells* Court was announcing a new rule of law, it held that "fairness and justice" required that its decision "should apply purely prospectively" and "only to cases in which the operative facts arise after the date of the decision." *Id.* at 297–98, 627 *A.*2d 654 (citations omitted). The creation of a new rule of law by the Supreme Court requires the Court to address the perplexing doctrine of retroactivity. Essentially, the Court has four choices. It may:

"(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted."

[*Coons v. Am. Honda Motor Co., Inc.*, 96 *N.J.* 419, 425, 476 *A.*2d 763 (1984) (quoting *State v. Burstein*, 85 *N.J.* 394, 402–03, 427 *A.*2d 525 (1981)), *cert. denied*, 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985).]

Deciding which option to apply in a given case requires a consideration of several factors and a painstaking weighing of those factors. *See, e.g., Kibble v. Weeks Dredging & Constr. Co.*, 161 *N.J.* 178, 735 *A.*2d 1142 (1999); *Fischer v. Canario*, 143 *N.J.* 235, 670 *A.*2d 516 (1996); *Montells, supra*, 133 *N.J.* at 295–98, 627 *A.*2d 654; *Crespo v. Stapf*, 128 *N.J.* 351, 608 *A.*2d 241 (1992); *Rutherford Educ. Ass'n v. Bd. of Educ. of Rutherford*, 99 *N.J.* 8, 489 *A.*2d 1148 (1985); *Coons, supra*, 96 *N.J.* at 426, 476 *A.*2d 763. Once the choice is made, however, there is little disagreement as to what the Court's choice means. As generally understood, when the new rule of law is to be applied on a "purely prospective" basis the court refuses to apply the new rule "not only to the parties before the court but also to *any* case where the relevant facts predate the decision." *Harper v. Virginia Dep't of Taxation*, 509 *U.S.* 86, 114, 113 *S.Ct.* 2510, 2527, 125 *L.Ed.*2d 74, 98 (1993) (O'Connor J., joined by Rehnquist, C.J., dissenting) (citing *James B. Beam Distilling*

*Co. v. Georgia,* 501 *U.S.* 529, 536, 111 *S.Ct.* 2439, 2443, 115 *L.Ed.*2d 481, 488 (1991)); *see also,* Annotation, *Prospective or Retroactive Operation of Overruling Decision,* 10 *A.L.R.*3d § 1 1371, 1377 (1966) (the "purely prospective" option is understood to apply "only when the new rule is confined in its effect to future cases arising from fact situations occurring after the announcement of the new rule"). On the other hand, where the court applies the new "rule to some but not all cases where the operative events occurred before the court's decision, depending on the equities" the option is called "selective prospectivity." *Harper, supra,* 509 *U.S.* at 114, 113 *S.Ct.* at 2527, 125 *L.Ed.*2d at 98. In New Jersey, where the Court believes that a "purely prospective" application of a new rule of law is unfair to the successful litigant, and applies the new rule to the parties, or perhaps the parties and other limited litigants, the choice is called "limited prospectivity," an identical concept to "selective prospectivity." *Kibble, supra,* 161 *N.J.* at 195–96, 735 *A.*2d 1142; *Fischer, supra,* 143 *N.J.* at 246–48, 670 *A.*2d 516; *Rutherford Educ. Ass'n, supra,* 99 *N.J.* at 26–27, 489 *A.*2d 1148.

▮ The point is that our Supreme Court appreciates the distinction between choosing the "purely prospective" option over other retroactivity options available to it. The *Montells* Court could not have made its choice clearer. It chose the "purely prospective" option, and to make its intent crystal clear, it added that the new rule would apply "only to cases in which the operative facts arise after the date of decision." *Montells, supra,* 133 *N.J.* at 298, 627 *A.*2d 654. This wording used by the Court is nearly the same formulation of the "purely prospective" option described by Justice O'Connor in *Harper, supra,* which makes the new rule inapplicable to "any case where the relevant facts predate the decision." 509 *U.S.* at 114, 113 *S.Ct.* at 2527, 125 *L.Ed.*2d at 98. Irrespective of whether the retroactivity choice made by the Supreme Court is open to criticism, when the choice is made the meaning is clear. It is not an intermediate appellate court's function to make a more equitable rule by converting the Court's choice of the "purely prospective" option into a "limited

prospectivity option." That is what defendant asks this court to do, and we respectfully decline the invitation.

We are mindful of the fact that the *Standard* court opined that the "prospective" rule of *Green v. Auerbach Chevrolet Corp.*, 127 *N.J.* 591, 600, 606 *A.*2d 1093 (1992) should apply to causes of action that accrued before the decision. *Standard, supra,* 279 *N.J.Super.* at 256, 652 *A.*2d 746. Nonetheless, it is noteworthy that the *Standard* court made it clear that even its decision had prospective effect. It said in that regard:

> [I]n the future, we see no equitable or sound policy reason why youthful litigants who were injured prior to June 3, 1992, must invariably be given until two years from their twenty-first birthday to commence suit if, in fact, they have two years notice of *Green.* The proper limit, we suggest, is two years from the date of *Green,* two years from the date of accident, or two years from attaining the age of eighteen, whichever is the later. Such a formulation should greatly accelerate implementation of *Green,* while accommodating the competing considerations noted in *Montells.*
>
> [*Ibid.* (footnote in citation omitted).]

Furthermore, the court's statement was *dicta,* and was recognized as such by Justice Garibaldi in her dissenting opinion in *Wilson, supra,* 158 *N.J.* at 287, 729 *A.*2d 1006. As a member of the Court that decided *Montells,* Justice Garibaldi had every right to question, in retrospect, the breadth of the Court's prospectivity ruling in that case. That Justice Garibaldi would have elected to follow *Standard*'s *dicta* in applying the *Montells* decision is interesting but irrelevant. The important point is that the *Wilson* Court was invited by the dissent to reconsider the "purely prospective" language of *Montells* and chose not to do so.

With due respect to our colleagues on the *Standard* court and our dissenting colleague, the proposed rule resulting from the *dicta* in *Standard* changed the purely prospective option chosen by the *Green* Court to one of limited prospectivity in that it applied the new rule of *Green* from the date of decision to causes of action that may have accrued before that date. In doing so, the court simply reconsidered and re-weighed the equitable factors that the Supreme Court had already weighed and balanced in formulating its decision as to which of the retroactivity options it

would choose. *Standard, supra,* 279 *N.J.Super.* at 254–56, 652 *A.2d* 746; *compare Green, supra,* 127 *N.J.* at 600–01, 606 *A.2d* 1093. While we do not quarrel with the logic of the *Standard* court's analysis, or the reasonableness of its conclusion, in our view, it was not an intermediate court's function to perform. The Supreme Court has, when it has deemed it appropriate to do so, reconsidered its choice of retroactivity options. *Coons, supra,* 96 *N.J.* at 422, 476 *A.2d* 763 (holding that its decision in *Coons I* would be made prospective from the date of the decision in *Coons I* rather than retroactive, as it initially held in that case). In like manner, we construe Justice Garibaldi's endorsement of the reasoning of the *Standard* court to be an invitation to the Court to reconsider its "purely prospective" holding in *Montells* and change it to one of limited prospectivity. Clearly, the majority of the Court saw no need to do so.

We believe that the words chosen by the *Montells* Court have achieved an indisputable meaning and leave no room for interpretation. It is for the Supreme Court, not this court, to decide whether on reflection and reconsideration there should be selective prospectivity in the application of the *Montells* rule. To the extent, however, that it may be argued that the language used by the *Montells* Court is open to interpretation, we believe that where one reasonable interpretation saves plaintiff's cause of action and the other interpretation bars it, elemental fairness requires that the plaintiff have a hearing on the merits of the claim. Thus, under either approach to the issue before us, the judgment under review must be affirmed.

Affirmed.

RODRÍGUEZ, A.A., J.A.D., dissenting.

I respectfully dissent from the majority opinion. I would reverse, holding that plaintiff's claim for sex discrimination is time-barred.

I agree with the majority that in *Montells v. Haynes,* 133 *N.J.* 282, 627 *A.2d* 654 (1993), the Supreme Court expressly made its

ruling, that the two-year statute of limitations set by *N.J.S.A.* 2A:14–2 applies to a LAD action, prospective only. However, in my view, the Supreme Court also impliedly held that there is an outside limit of two years from the date of the *Montells'* decision to file a LAD action when the operative facts arose before the date of decision. The thrust of the *Montells'* decision and its rationale is to eliminate confusion by setting *one* period of limitations, *i.e.* two years. The majority here, in effect, would interpret *Montells* as setting two statutes of limitations. A six-year limitation for cases arising prior to the decision and a two-year limitation for all other claims. That result is not what the Supreme Court intended and it is not what the Court held.

The Court stated that because "[t]he state of the law on the applicable statute of limitations under LAD was sufficient murky [prior to the time of its holding] to justify plaintiff's reliance on the six-year period," its decision "applies only to cases in which the operative facts arise after the date of the decision." *Id.* at 298, 627 *A.2d* 654. This clause is, by its very terms, intended to be a transitional exemption from the ruling for the benefit of those who may have *relied* on the applicability of the six-year statute of limitations. However, as Justice Garibaldi observed in her dissent in *Wilson v. Wal–Mart Stores,* 158 *N.J.* 263, 287, 729 *A.2d* 1006 (1999), "[a]ny purported reliance by [the plaintiff] on the previous six-year statute of limitations was no longer *reasonable* more than two years after [the *Montells* ] decision." (emphasis added) The *Wilson* majority opinion did not specifically address this particular issue. I therefore, must disagree with my esteemed colleagues' assertion that, "The *Wilson* court was invited by the dissent to reconsider the 'purely prospective' language of *Montells* and chose not to do so." Better stated, the *Wilson* majority simply did not reach this issue. It should also be observed that the *Wilson* majority did not criticize Justice Garibaldi's comment at all.

I also note that another Appellate Division panel and the federal district court for New Jersey have taken a similar position as that expressed by Justice Garibaldi in *Wilson. See Standard v. Vas,*

279 *N.J.Super.* 251, 652 *A.*2d 746 (App.Div.1995); *see also Povero-mo–Spring v. Exxon Corp.,* 968 *F.Supp.* 219 (D.N.J.1997).

*Standard* involved the tolling of the minority statute of limitations. We held that the Supreme Court in *Green v. Auerbach Chevrolet Corp.,* 127 *N.J.* 591, 606 *A.*2d 1093 (1992), did not intend to toll the running of the statute of limitations until the twenty-first birthday of every minor who had accrued a cause of action before the date of the *Green* opinion. *Standard, supra,* 279 *N.J.Super.* at 256, 652 *A.*2d 746. We reached this result because in *Green* the Supreme Court had "made clear its recognition of the balancing equitable considerations of statutes of limitation; promotion of timely and efficient litigation of claims, prevention of stale claims; provision of repose; and the recognition of the impact of time upon the memory and availability of witnesses." *Id.* at 255, 652 *A.*2d 746 (citations omitted). We simply could discern "no equitable or sound policy reason" to allow all litigants to wait until two years after their twenty-first birthday before filing a complaint. *Id.* at 256, 652 *A.*2d 746. Thus, we concluded that an individual who had reached eighteen years of age when the law was unsettled had to commence his lawsuit within two years of the date of the *Green* decision.

In *Poveromo–Spring,* the plaintiff alleged that her employer discriminated against her because of a handicap, in violation of the LAD. She claimed that her employer refused to provide her with a reasonable accommodation and also had harassed her starting in October 1991. *Poveromo–Spring, supra,* 968 *F.Supp.* at 222–23. She filed her complaint initiating the lawsuit on December 26, 1995. In a report and recommendation then-Magistrate Judge Joel Pisano concluded that the LAD claims, which were based upon facts arising before July 27, 1993 (the date of the *Montells* decision), should be dismissed pursuant to the *Standard* holding. *Id.* at 224. Agreeing with the magistrate judge, District Court Judge Joseph A. Greenaway, Jr. affirmed his recommendation. *Id.* at 225.

For the foregoing reasons, I would have reversed and granted PNC Bank Corporation's motion for summary judgment.